Desmond, J.
Section 118c of the Sanitary Code of the City of New York is in pertinent part (subds. 1, 3.) as follows:
“ § 118c. Dispensing of Barbiturates on Prescription .Only; Filling and Refilling Prescriptions.-
,“ 1. No barbiturate as defined in Section 118b shall be sold, of dispensed, or given away in The City of New York except *499 by a pharmacist or druggist on an original written prescription as defined in paragraph 7 of Section 115, which prescription shall include the name and address of the practitioner, the name and address of the patient, and if prescribed for an animal, the species of such animal. Telephone prescriptions from practitioners legally authorized to prescribe barbiturates may be filled by a pharmacist or druggist and, in such cases, the practitioners must furnish to the pharmacist or druggist a written prescription within seventy-two hours. If the written prescription is not received by the pharmacist or druggist within such period, the pharmacist or druggist shall make a record showing the name and address of the physician, the name and address of the patient, the amount of barbiturate dispensed and the time and date of dispensing. Such record shall be kept on file by the pharmacist or druggist for a period of not less than two years and shall be exhibited to representatives of the department of health upon request.
# * #
‘ ‘ 3. The refilling of any prescription for a barbiturate as defined in Section 118b is prohibited unless such prescription includes a statement by the practitioner (1) That it may be refilled and (2) Specifying the minimum interval between fillings and the total number of refillings prescribed. No such prescription shall be refilled in any event later than three (3) months after the original issuance thereof.”
Defendant Caswell-Massey Co., Ltd., operates a pharmacy on Lexington Avenue in Manhattan. The individual defendants Milton Taylor and Ralph Taylor are officers of the corporation and active in the prescription-filling department of its business. All three defendants were cónvictéd and fined, after a trial before a Magistrate sitting as a Court of Special Sessions, on charges of violations of section 118c of the Sanitary Code of the City of New York (supra). The Appellate Division affirmed.
In substance, the corporation is accused of violating section 118c (supra) on nine different dates in 1955 by refilling (that is, filling without a new prescription) a July 25, 1955 prescription for a barbiturate. The original July, 1955 prescription did not contain, it is conceded, a statement by the prescribing physician that the prescription might be refilled (see subd. 3, *500 supra). The complaint against defendant Milton Taylor charges that on eight of the nine 1955 dates just above referred to he was guilty of the same act as alleged against the corporation. The complaint against defendant Ralph Taylor makes the same charge against him, as of August 16, 1955. The meaning is that Milton Taylor was in charge of the prescription department and directed the issuance of the so-called refill on the dates of eight of the alleged violations. Ralph Taylor likewise is charged as of August 16, 1955 because he was running the prescription department and handled the transaction on that date. In each instance there was sold to a City Health Department investigator 10 capsules each containing a grain and a half of nembutal, a barbiturate, for the price of $1 for the 10. It is testified in the record without dispute that nembutal is a habit-forming substance prescribed for inducing sleep but that it is not dangerous to health in these quantities.
The substance of the trial testimony was that the Health Department employee, using an assumed name, got from a physician (who knew this was part of an investigation) the original prescription for 10 grains of nembutal. That original prescription contained no direction or authorization for refill but was refilled nine times at the pharmacy of defendant Caswell-Massey Co., Ltd.
The prosecution says that under the Sanitary Code (supra) each of those refills was illegal and a criminal violation of the code because the original prescription did not contain a direction for refilling. The defense was: first, that the Sanitary Code is so ambiguous or uncertain in meaning that it does not meet the standards for a criminal statute; second, that under any reasonable meaning of the code these refillings were not illegal since as sworn to by defendants there was in each instance a telephonic authorization by the prescribing physician or his office for the refill; and third, that since the first subdivision of section 118c (supra) specifically validates original telephone prescriptions without any stated necessity for a later written prescription and since it is the New York City custom as established by this record to make refills on telephone instructions, no guilty act of defendants was established. Put in another way, the submission of defendants is that, since any number of original prescriptions may validly be filled on telephone *501 instructions without a writing, it is an unreasonable construction of this Sanitary Code and contrary to its practical construction in the trade to penalize a druggist or pharmacist for refilling on telephone order when the identical prescription if considered to be an original one can be authorized by telephone as could any number of subsequent identical original prescriptions.
The trial court did not pass on the disputed fact question as to whether defendants got telephone authorization from the physician’s office on the occasion of each refill. The court found it unnecessary to pass on that issue since it held that each of these refills was a violation of the statute because there was no writing authorizing it.
We hold that subdivision 3 of section 118c, read as it must be with subdivision 1, is not clear and explicit enough to meet the requirement that “ Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited ’ ’ and that “ They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements ” (People v. Grogan, 260 N. Y. 138, 145; People v. Vetrie, 309 N. Y. 401, 406; People v. Benc, 288 N. Y. 318; People v. Firth, 3 N Y 2d 472; United States v. Cardiff, 344 U. S. 174). A criminal statute must give “ unequivocal warning ” to citizens, of the rule which is to be obeyed, and, especially as to acts not mala per se, there must be a clear and positive expression of legislative intent to make them criminal (People v. Vetrie, supra, and cases cited therein, 309 N. Y. 405, 406).
If subdivision 1 were the whole of the law it would probably be clear enough. We will assume, also, that subdivision 3 read separately might provide an understandable rule. But when we read the two subdivisions together, as we must for the purpose of deciding when and how a barbiturate prescription may be filled more than once, we cannot work out a clear meaning. The first sentence of subdivision 1 requires an original written prescription. But the second sentence of subdivision 1 supplies a very large exception to that requirement of a writing in that it specifically permits the filling of telephoned barbiturate prescriptions. The end of that second sentence says that when *502 such prescriptions are filled by telephone physicians must send the pharmacist a written prescription within 72. hours. However, that mandate is addressed not to the pharmacist but to the physician, as is established by the third sentence of subdivision 1 which says that if after filling a telephoned prescription the druggist does not get a written prescription within 72 hours the druggist must make a record of that occurrence and keep that record available for 2.years. Thus it is clear, on a reading of the whole of subdivision 1, that a druggist is not violating the law by taking a telephoned barbiturate prescription even if he does not get later written authorization therefor, provided he makes a written record thereof.
Now let us turn to subdivision 3 on which these defendants were convicted. That forbids the refilling of a barbiturate prescription unless the prescription includes a statement that it may be refilled and contains a specification of the minimum interval between fillings and the total number of refillings permitted. The statute adds a further proviso that there shall be no refilling more than 3 months after the issuance of the original prescription. Here is the point at which subdivisions 1 and 3, read together, become unworkable if not unintelligible. Subdivision 1 validates telephoned prescriptions never afterwards put into writing. Then subdivision 3 turns around and forbids the refilling of such a prescription (which may validly be oral) unless it contains written permission for refilling and particulars as to number and intervals of refillings. Having authorized oral prescriptions, the statute reverses itself and requires that to be refilled such prescriptions must contain certain written material. Such a statute could mean so many things to careful people that it does not meet the requirements of precision for a criminal law. And that is not all. Subdivision 1 plainly means that a druggist may, as many, times as he wishes, validly accept telephoned barbiturate prescriptions and this would.seem to be so even though the successive telephoned prescriptions were each for the same quantity of the same drug. Then, having made it legal for a druggist to take a series of separate telephoned barbiturate prescriptions, subdivision. 3 seems to say that if those later prescriptions are refills each of them is invalid unless the druggist has a writing. All this adds up to confusion only.
*503 These defendants recorded every, filling.of a prescription in a book prepared for that purpose which has printed columns for date, number of prescription, name of physician, name of patient, type of medicine, etc., etc. Every prescription, original or refill, was given a consecutive number in the book. In one column there was inserted, in the case of a refill, the number of the original prescription refilled. Thus, in the case of a refill the book entry contains two numbers. Since telephoned prescriptions are valid, a druggist may treat a telephoned request from the doctor’s office for a product theretofore prescribed either as an original prescription or a refill and the only difference is that in the latter case he puts into his book, besides the new number, the original number also. All he has to do is to omit recording the original number, and the new-filling becomes a new prescription and valid although telephoned.
The judgments should be reversed, the fines remitted and the complaints dismissed.