OPINION OF THE COURT
Herman Cahn, J.
Movants are two attorneys who have been indicted for, *1030 among other crimes, grand larceny, second degree (count 5). This count of the multicount indictment is based on their executing a default judgment allegedly obtained by means of improper service. The allegations are an innovative use of the grand larceny statute.
Movants move to set aside their conviction of count 5.
THE FACTS
Defendant Daniel P. Foster (Foster) is an attorney who practices in Brooklyn with several other attorneys, codefendants. Defendant Kathleen Paolo (Paolo) is an attorney practicing in Brooklyn and a friend of Foster’s.
Prior to August 1984, Foster and his firm represented Mia Prior (Prior). At the end of July 1984, a check on Prior’s account with a local bank, in the sum of $7,700, was cashed. The check was made payable to "Harold Jones”. Trial testimony showed that the proceeds of the check were turned over to Foster, and that Foster arranged to have a codefendant take the check to the bank on which it was drawn and there cashed. At the time the check was cashed, a letter of authorization allegedly signed by Prior was also presented to the bank. This transaction forms the basis of several other counts of the indictment, which are not the subject of this decision.
Prior asserted that her signature on the check was forged. Further, the two men who had cashed the check were apparently associated with the Foster firm in some way. As a result of Prior’s assertions, the bank began an investigation into the matter.
In the beginning of September 1984, after the existence of the investigation had already come to the notice of his firm, Foster arranged to have several civil actions commenced against Prior. The plaintiff in one action was a professional corporation allegedly consisting of several physicians (the Steinman action); the plaintiff in the second action was Foster as president of his firm. The Foster firm represented plaintiffs in the Steinman action while Paolo acted as attorney for Foster in the Foster action.
The summonses in both actions were issued on the same day, September 11, 1984, at the same time. Foster turned them over to another individual for service. The process server was someone who knew him, and who apparently also had some knowledge of Prior.
The Steinman summons was attempted to be served at an *1031 apartment at 3657 Broadway, where Foster had reason to believe Prior was then living. She was not in the apartment when the process server came, and the summons was left there. An answer was interposed in that action, and the action is pending.
The Foster summons was not left at 3657 Broadway (where indeed Mia Prior was then living). The process server testified that since he had been told by an occupant of the apartment that she did not live there, he went to an apartment on East 12th Street where she had previously lived, and served someone at said apartment. (A copy of the summons was then mailed to Prior at the same address.) That person was a friend and associate of Foster, and a former friend and associate of Prior. In the Foster action a default judgment was entered. The People contend that said summons was purposely left at the East 12th Street address rather than at 3657 Broadway, so that Prior would not have notice of the Foster action. Thus, it is argued, a default judgment could be obtained.
In the Foster action, a notice of default was mailed to Prior on September 11, 1984, at 3657 Broadway. (CPLR 3215 [¶] [3].) After consulting with her attorney, Prior did not accept the letter in which the notice of default was mailed. On October 25, 1984, a default judgment was entered and an execution was issued. The Sheriff executed on the judgment and obtained approximately $7,800 from Prior’s bank account. Said money (less Sheriff’s fees) was turned over to Paolo who in turn turned it over to Foster.
Prior moved to set aside the judgment based on her claim that she had never been served, or in the alternative for leave to answer. This court (per Klein, J., at Special I) granted the motion as a matter of discretion, but not on the grounds that the court lacked jurisdiction. The court granted Prior leave to answer.
The above facts are the basis for the fifth count of the indictment, charging Paolo and Foster with grand larceny, second degree.
THE LAW
Defendants’ motion must be granted and the verdict, as to this count, set aside because the People have failed to prove an essential element of grand larceny in the second degree.
Grand larceny, second degree, was defined in Penal Law (as it existed on the day of the crime) § 155.35, as the stealing of *1032 property with a value of more than $1,500. An essential element of the crime is that the defendant did not have the authority of law or the consent of the owner to take the property. (People v Ricchiuti, 93 AD2d 842.)
As a matter of law, Paolo had "the authority of law” to execute the default judgment at the time the judgment was executed. As indicated earlier, Prior moved to open the default asserting both a jurisdictional objection and a meritorious defense. Upon such a motion, the presiding Judge is obligated to first consider the jurisdictional objections, and only if jurisdiction, i.e., service, was proper may the Judge consider the merits of the action. (Shaw v Shaw, 97 AD2d 403; Mayers v Cadman Towers, 89 AD2d 844.) Justice Klein opened the default, pursuant to CPLR 5015 (a) (1), upon the ground of excusable default, rather than pursuant to (a) (4) lack of jurisdiction: "Upon a careful reading of the papers submitted herein, this court finds the defendant has satisfied the requirements of CPLR 5015 (a) (1).” Justice Klein thus necessarily found jurisdiction, i.e., proper service, for if he had found otherwise, he would have been mandated by law to vacate the default and dismiss the action. (McMullen v Arnone, 79 AD2d 496; Community State Bank v Haakonson, 94 AD2d 838.) Furthermore, had service been held improper, the default judgment would have been rendered a nullity from its inception. (Shaw v Shaw, supra; McMullen v Arnone, supra.)
It follows that the default judgment obtained by Paolo was valid when rendered, and bestowed upon her the authority to execute it until the time it was formally vacated.
In fact, at the time that the judgment was executed, the motion to vacate the judgment had not yet been decided by an order of the court (although an opinion-decision had been rendered). The operative decision of the court on a motion is the order of the court, and not the decision or opinion (CPLR art 22). This rule is so basic that no further argument or citation need be brought; as but one example thereof, the court notes that the time to appeal runs from entry and service of the order, not the decision.
Thus, since Paolo caused the judgment to be executed on before the order vacating it had been entered, she was, at that time, operating with the authority of law.
The court does not opine that the complained of conduct was proper; it was not. Having notice of Justice Klein’s decision-opinion, defendants should not have permitted the *1033 judgment to be executed on. It may well be that said conduct violated the canons of ethics; it was not, however, a violation of the grand larceny, second degree, statute (Penal Law § 155.35).
Execution of a valid judgment is not without the authority of the law within the meaning of Penal Law § 155.35, grand larceny, second degree.
Motion granted.