OPINION OF THE COURT
Chief Judge Wachtler.
The defendants were convicted of larceny for executing a default judgment which is allegedly jurisdictionally defective. The defect, which relates to the sufficiency of the service of the summons on the defaulting party, appears on the face of the application for default. The People claim that the defendants knew that they had not properly served the summons and thus committed larceny. The theory is that the judgment was jurisdictionally defective, that the defendants were aware *599 of the defect and that they therefore knowingly took their opponent’s money without lawful authority.
A jury found the defendants guilty but the trial court set aside the verdict. The Appellate Division reversed and reinstated the conviction. The defendants appeal. The question is whether obtaining money pursuant to the default judgment constituted larceny.
The circumstances which led to this charge are complex and have generated several civil suits and criminal prosecutions involving these defendants and others. For the purposes of the issue presented by this case the facts may be stated with some brevity.
For approximately 10 years Mia Prior was a member of a communal group which operated various activist organizations. She served without pay in several administrative posts and received food, housing and other benefits from the group. During this period she met the defendants, Daniel Foster and Kathleen Paolo, both of whom are practicing attorneys in New York City and active members of the group. In 1983 she asked the defendant Daniel Foster to assist her with certain legal problems relating to her father who was then suffering from an illness requiring long-term care. When her father died in March of 1984 she asked the defendant Foster to handle his estate.
As a result of her father’s death, Mia Prior became the beneficiary of a trust. In July of that year she decided to leave the group. She wrote a letter criticizing its activities, packed an overnight bag and went to live temporarily with a friend on Broadway in Manhattan, leaving behind certain personal belongings. She also retained a Long Island lawyer to handle her legal affairs, which by that time included a dispute with the defendant Daniel Foster concerning his legal fee. She variously claimed that she was entitled to legal services as a member of the group, that the defendant had orally agreed not to charge her anything and that she paid him $1,000 leaving no outstanding balance. The defendant relied on a written retainer agreement and denied that there was any arrangement other than an understanding that he would not demand full payment until she had the funds. The dispute reached an impasse in August when the Long Island attorney informed the defendant that his client did not intend to pay the bill.
During the 10 years she worked with the group, Mia Prior *600 had resided at various places owned by the group or its members, including an apartment located at 415 East 12th Street in Manhattan. She had consistently listed that address as her residence on her driver’s license, bank book, and various legal documents filed in connection with her father’s estate. When she left the group she did not inform them where she was going and in the following months concededly made a conscious effort to conceal this information from them. In August the defendant Foster asked her new attorney if he would accept service for her, but the attorney told the defendant that he was not authorized to do so.
On September 11, 1984, the defendant Daniel Foster, represented by codefendant Kathleen Paolo, commenced an action against Mia Prior for the counsel fee allegedly owed. When she did not answer the summons, the defendants filed for a default judgment. The affidavit of service and each of the defendants’ affidavits submitted on the application state that a summons with notice was delivered to a person of suitable age and discretion at 415 East 12th Street, "the last known residence” of Mia Prior, and that a copy was then mailed to her at that same address. However, the relevant portion of the applicable statute (CPLR 308 [2]) provides that service upon a natural person shall be made "by delivering the summons within.the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by * * * mailing the summons to the person to be served at his or her last known residence or * * * actual place of business”. Thus facially the application was defective because it showed that Mia Prior’s last known residence was used to satisfy both the mailing and delivery requirements. Nevertheless a default judgment was entered.[1] The defendants delivered the judgment to the Sheriff who executed it by removing over $7,000 from Mia Prior’s bank account.
The defendants were charged with grand larceny in the second degree for stealing over $1,500 from Mia Prior. The defendants moved to dismiss, claiming that they could not be found guilty of larceny for taking money pursuant to a default judgment even if it was erroneously granted. The People *601 argued that the defendants could not rely on the judgment when they knew the court had never acquired personal jurisdiction over Mia Prior because of the manner in which the defendants chose to serve her. The motion to dismiss the indictment was denied.
At the trial the People sought to show that when the summons was served, Mia Prior was residing on Broadway, not on East 12th Street, and that the defendants were aware of this. The defendants contended that the East 12th Street address was the one which she had chosen to use in all her legal dealings with them and others, that she had not informed them of any change of address and that they were unable to serve her at any other place where she might be staying temporarily, because she was evading process. There was evidence that on the day the defendants served her at the East 12th Street address, the defendant Daniel Foster had the same process server use the same mode of service to commence an unrelated action against her at the Broadway address and that an attorney had appeared for her in that action. However the defendants claimed that on that day the process server had informed them that when he delivered the summons at Broadway he had been told by the person who accepted it that she did not reside there. They then directed them to deliver the summons in the action at issue here to the East 12th Street address and had subsequently sent notice of default by certified mail, apparently to both addresses. The person who accepted the summons at Broadway testified that he had simply told the process server that she was not there at that time but would return later. It was conceded, however, that she did not want the defendants to know that she was residing there, that she had left instructions to that effect and that she had later refused to accept the certified letter on advice of counsel.[2]
The jury found the defendants guilty of grand larceny as *602 charged but on motion by the defendants the court set aside the verdict.[3] The court held that the judgment was valid when executed and that the defendants therefore had "the authority of law” to obtain the money. The court noted that Mia Prior had made a motion in the civil action to open the default claiming that she had not been properly served and that the default was excusable. Since the court had opened the default and permitted her to answer, without dismissing the action, it must have found that it had personal jurisdiction over her (135 Misc 2d 1029).
On the People’s appeal, the Appellate Division reversed and reinstated the conviction. The court held that "where a judgment has been obtained by the service of a summons at an address where it is known that the person sought to be served does not reside and with intent of depriving that person of property, the judgment has been obtained without the authority of law and can serve as the basis of a grand larceny conviction. Moreover, we disagree with the trial court that because the court in the civil action for legal fees vacated the judgment without dismissing the action, it necessarily found that service was proper. There is no indication that the defendant in the civil action, Prior, sought dismissal of the action” (143 AD2d 56, 58).
On this appeal the defendants argue, as they have throughout, that they had a right to rely on the default judgment, even if it was erroneously issued, and cannot be held to have taken the defaulting party’s money without lawful authority when that was authorized by the judgment. The People contend that the judgment provides no protection for these defendants because they obtained it by fraud and deceit on the court.
The People concede that this is a novel theory for a larceny prosecution in this State, but note that it has been recognized *603 in four other jurisdictions as a basis for larceny (Commonwealth v Aronson, 312 Mass 347, 44 NE2d 679 [obtaining court order by forgery and misrepresentation]; Mowrey v State, 122 Tex Crim 456, 55 SW2d 816 [fraudulently obtained court order]) or attempted larceny charges (Adler v Sheriff, Clark County, 92 Nev 436, 552 P2d 334 [filing false claim in judicial proceedings]; People v Wallace, 78 Cal App 2d 726, 178 P2d 771 [false filing of civil suit]). In the cited cases the defendants had generally obtained or attempted to obtain a court order by forgery, perjury or other misrepresentation of the facts. There is no support in the record for such a theory in this case.
The People’s statement, uncritically accepted by the dissenters, that the defendants "falsely represented to the court that proper service on Prior had occurred” is itself inaccurate. Although the affidavit of Kathleen Paolo erroneously states the boilerplate legal conclusion that "service was duly made” on the defaulting party, the defendants did not misrepresent the facts. As noted above, the affidavits clearly show that service had not been made in the manner prescribed by the statute. When the court granted the default, it may have been mistaken, but it was not misled.
Indeed, the People’s theory at trial was that the defendants wrongfully obtained the default judgment, not because they misinformed the court as to how they had served the summons, but because they knew that the service was inadequate and that the court therefore lacked jurisdiction to grant a default judgment. The People urge that this conduct falls literally within the definition of larceny found in subdivision (1) of Penal Law § 155.05, which states: "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof’. As noted, the theory is that if the court’s order was a nullity, and the defendants knew it, any money they took from the defaulting party by use of the order was taken without lawful authority and was therefore taken wrongfully.
We are not concerned here with whether the defendants violated the canons of professional responsibility or could be held liable for damages in a civil action, but whether they committed a crime. Conduct which is wrongful in the civil context is not necessarily "wrongful” within the meaning of *604 the larceny statutes (People v Yannett, 49 NY2d 296, 302; People v Yonkers Constr. Co., 17 NY2d 322, 337). The courts and the Legislature have been reluctant to elevate civil wrongs to the level of criminal larceny (People v Keeffe, 50 NY2d 149, 159; People v Ryan, 41 NY2d 634, 641), particularly when the conduct arises out of legitimate business activities where there are often close questions as to whether the defendant acted intentionally or was merely incompetent (People v Churchill, 47 NY2d 151, 157). They are also reluctant to see civil suits beget criminal prosecutions, as is evident from the statute derived from the common law, requiring corroboration for perjury and similar offenses in order to discourage litigants defeated in civil suits from bringing retaliatory criminal charges against their erstwhile opponents (Penal Law § 210.50; People v Sabella, 35 NY2d 158, 167-168).
In such cases, whenever the Legislature has found that certain acts performed in these contexts warrant criminal punishment, it has generally identified the prohibited conduct quite specifically and provided some additional safeguard, such as the corroboration requirement for perjury (Penal Law § 210.50), the very high burden of proof applicable to larceny by false promise (Penal Law § 155.05 [2] [d]; People v Ryan, supra, at 639-640) or the affirmative defenses to issuing a bad check and the related larceny (Penal Law §§ 190.15, 155.05 [2] [c]), in order to protect the truly inept or victims of spite from being branded as criminals. Indeed, even in civil cases the courts are reluctant to penalize attorneys for actions taken on behalf of their clients which allegedly injured their opponents, for fear of inhibiting free access to the courts. Thus, when it is claimed that an attorney has brought a meritless suit or proceeding the court will not find civil liability unless the conduct is otherwise tortious (Drago v Buonagurio, 46 NY2d 778), nor will it impose a civil penalty in the absence of a statute or court rule specifically defining the prohibited conduct and authorized penalties (Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1).
Penal Law § 155.05 (2) broadly "includes” every common-law larceny offense, as more expansively defined by the Legislature (Penal Law § 155.00), together with several statutory offenses not previously considered larceny by the courts (see, e.g., People v Churchill, supra). It has been, and should be, broadly interpreted to carry out the legislative intent (Penal Law § 5.00; see, e.g., People v Alamo, 34 NY2d 453). But, despite the broad reach of subdivision (2), the People concede *605 that it does not include cases where property has been "wrongfully” taken by use of a fraudulently obtained court order or one which the defendant knew was jurisdictionally defective. They claim that subdivision 1 of that section was intended to serve as a catchall or generic larceny offense which is broad enough to encompass such conduct. We have noted on several occasions, however, that the broad wording of this statute is narrowed by its history and purpose (People v Johnson, 39 NY2d 364, 369-370; People v Karp, 298 NY 213).
As was the case with its predecessor (former Penal Law § 1290), subdivision (1) is designed to eliminate the risk that a prosecution might fail because the evidence at trial proved that the defendant "stole the property in a manner different from the manner charged in the accusatory instrument” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 155, at 101; see also, People v Johnson, supra; People v Karp, supra). It provides a definition of larceny sufficiently broad, for pleading purposes, to encompass all larceny offenses recognized at common law as redefined by the Legislature (People v Johnson, supra; People v Alamo, supra, at 459-460), together with the purely statutory offenses listed in subdivision (2) and elsewhere. But it does not enlarge the scope of the crime or constitute a catchall for acts not otherwise specifically prohibited by the Legislature (People v Karp, supra).[4] In short, the defendants’ conduct is not larceny as defined by the Legislature.
*606 We do not mean to minimize the problem or suggest that those who misuse the judicial process to harass or invade the rights of others are never deserving of punishment under the Penal Law. The problems of baseless lawsuits, as well as "sewer service” and its variants, have been subject to much discussion and proposed solutions, some of which have been adopted (see, Siegel, NY Prac §71, at 76-77). The goal has always been the difficult one of devising measures which discourage or frustrate the few who abuse the process, without inhibiting the many honest lawyers and litigants by placing them in constant dread that they may be held to criminal account for an arguable professional misstep, possibly caused by oversight, or indifference, even by the court or court personnel. It may be that the ultimate solution is to impose criminal penalties; but that is a determination to be made by the Legislature. If, as we have held, attorneys and parties who pursue their adversaries through the courts with meritless claims cannot be subject to civil penalties for the losses suffered without fair notice by statute or regulation of the prohibited conduct, at least the same protections should be afforded before the more severe criminal penalties of the larceny statutes are imposed (cf., People v Keeffe, supra, at 159).* ***[5]
Accordingly, the order of the Appellate Division should be reversed, and the order of the Supreme Court reinstated.

. There is no indication that a Judge actually passed on the application. It appears from the record that the papers were accepted by a clerk as a default on a claim for a sum certain (CPLR 3215 [a]), which it was not (see, Siegel, NY Prac § 293, at 347). The clerk should have referred the application to a Judge (CPLR 3215 [b]).

. Although the facts are not dispositive for this appeal, certain statements made by the dissent should be clarified.
The dissent states that legal services were one of the benefits provided by the group, suggesting apparently that the defendants’ suit for legal fees was unfounded. As a member of the group, Mia Prior may have been entitled to some legal services, but she was unable at this criminal trial to show how any of the various agreements referred to entitled her to have legal services performed for or on behalf of her father.
The dissent also notes that she was staying at an apartment on West 55th Street on the day she decided to leave the group, and suggests that this was her last residence as far as the defendants knew. Actually this apartment *602 was located above and was attached to the defendant Foster’s law office. At the trial, Prior conceded that she only stayed there temporarily, for a few weeks during the summer while she recovered from a back injury. Under all these circumstances this address cannot reasonably be said to be her "last known residence” within the meaning of CPLR 308 (2), as the dissent would hold (at 613).
Indeed, we assume the dissent is not suggesting that the defendant would have been better advised professionally to mail the summons to Prior at his own apartment.

. The defendants were also convicted of other offenses. Their appeal relating to those offenses is still pending in the Appellate Division.

. Contrary to the dissent, the discussion of this point in People v Karp (298 NY 213) is not dictum. In Karp, as here, the prosecutor urged that conduct never previously regarded as larceny in this State could, nevertheless, be punished as larceny because it fell within the broad definition of larceny found in former Penal Law § 1290 (now Penal Law § 155.05 [1]). We rejected that argument noting (at 216) that the law was not "designed to, and did not, broaden the scope of the crime of larceny or designate as criminal that which was previously innocent.”
The dissent also misses the point in attempting to dismiss People v Johnson (39 NY2d 364) as an irrelevant lesser included offense determination. What the dissent overlooks is that in resolving that point, the court first had to construe Penal Law § 155.05 (1) and its companion § 155.45 (1). After reviewing the history and purpose of those statutes, this court concluded (at 369-370) that they were enacted to deal with "pleading and proof’ problems and should not be given effect beyond their intended scope.
Finally, the quotation from People v Keeffe, (50 NY2d 149) on which the dissent relies, simply illustrates that subdivision (1) of Penal Law § 155.05 is broad enough to encompass all the larceny offenses listed in subdivision (2) or elsewhere and that, to that extent, it provides an alternative basis for pleading and conviction. Neither that case nor any other case from this court has held that a defendant could be convicted of larceny on the basis of *606 subdivision (1), when the conduct had never been proscribed under subdivision (2) or any other provision of law. Notably subdivision (2) states that "[l]arceny includes” specified conduct, suggesting an exhaustive list of conduct proscribed as larcenous under the Penal Law. If the Legislature had intended this to mean larceny "includes, but is not limited to” the proscribed conduct, it could easily have used those terms as it did in defining other aspects of larceny in the section immediately preceding this one (Penal Law § 155.00 [2], [8]).

. In view of this disposition it is unnecessary for us to consider the other issues as to whether the service was good under the circumstances (cf., Dobkin v Chapman, 21 NY2d 490), whether a finding of jurisdiction by the civil court, or a waiver of the defect by failure to assert it, should be given preclusive effect in the criminal prosecution, and whether a waivable jurisdictional defect renders an order a nullity for the purpose of imposing liability on those who have relied upon it.