# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**94**

**KA 11-02170**

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, VALENTINO, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

               V                              MEMORANDUM AND ORDER

OLGA CASIANO, DEFENDANT-APPELLANT.

---

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (KRISTIN M. PREVE OF COUNSEL), FOR DEFENDANT-APPELLANT.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (DAVID A. HERATY OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (M. William Boller, A.J.), rendered July 12, 2010. The judgment convicted defendant, upon a jury verdict, of grand larceny in the third degree, falsifying business records in the first degree (7 counts) and offering a false instrument for filing in the first degree (7 counts).

It is hereby ORDERED that the judgment so appealed from is unanimously reversed as a matter of discretion in the interest of justice and on the law, the indictment is dismissed and the matter is remitted to Supreme Court, Erie County, for proceedings pursuant to CPL 470.45.

Memorandum: Defendant appeals from a judgment convicting her, upon a jury verdict, of grand larceny in the third degree (Penal Law § 155.35 [1]) and seven counts each of falsifying business records in the first degree (§ 175.10) and offering a false instrument for filing in the first degree (§ 175.35). We agree with defendant that the judgment must be reversed and the indictment dismissed (*see People v McNab*, 167 AD2d 858).

This matter stems from allegations of public assistance fraud relating to defendant's operation of a daycare. In October 2007, the New York State Office of Children and Family Services (OCFS) issued defendant a license to run a group family day care home (*see* 18 NYCRR part 416). Pursuant to OCFS regulations, a group family day care home "must be operated by a provider and have at least one assistant present during the hours that care is provided" (18 NYCRR 413.2 [1] [j]), and the provider and assistant must be the "primary caregivers" of the children (18 NYCRR 416.8 [1] [c]). Any "caregivers who are not providers or assistants must meet the qualifications of an assistant" (18 NYCRR 413.2 [1] [j] [2] [ii]). Defendant thereafter contracted with the Erie County Department of Social Services (DSS) to provide

daycare services to low income families.  Parents applied to DSS for childcare subsidies and received preapproval letters indicating the days of the week and the number of hours per day they were approved for daycare.  On a monthly basis, defendant submitted vouchers to DSS listing the children in her care and the hours that she provided daycare during that month, and DSS paid defendant in accordance with the vouchers.

OCFS received a complaint against defendant in 2008, and an OCFS licensor was assigned to investigate the complaint.  From February to June 2008, the licensor visited the daycare on several occasions and, during many of those visits, no one answered the door and there were no signs of activity inside.  During another visit, an unlicensed assistant was supervising the children, in violation of OCFS regulations.  As a result of the investigation, OCFS referred the case to DSS for suspected public assistance fraud.  DSS investigators conducted periodic surveillance of the daycare between April and July 2008 and many times did not see any children at the daycare.

Defendant was charged by indictment with one count of grand larceny in the third degree (Penal Law § 155.35 [1]) and 10 counts each of falsifying business records in the first degree (§ 175.10) and offering a false instrument for filing in the first degree (§ 175.35).  Count one of the indictment alleged that, between October 1, 2007 and July 30, 2008, defendant "stole property having a value in excess of [$3,000], to wit:  a sum of money, belonging to [DSS]."  Counts 2 through 11 charged defendant with making false entries in the business records of DSS between various dates by submitting vouchers identified only as having either Vendor No. 42835XH (counts 2, 5, 6, 8, 11) or Vendor No. 923351HR (counts 3, 4, 7, 9, 10).  Counts 12 through 21 charged defendant with presenting written instruments that contained false information to DSS by submitting vouchers again identified only as having Vendor No. 42835XH (counts 12, 15, 16, 18, 21) or Vendor No. 923351HR (counts 13, 14, 17, 19, 20).  Defendant requested a bill of particulars identifying the facts underlying each of the charges in the indictment, which the People refused to provide.

At trial, the crux of the People's case was the testimony of a DSS special investigator, who testified over defendant's repeated objections.  The investigator reviewed the school and bus schedules of the children who attended the daycare, their parents' work schedules, the parents' applications for daycare subsidies and preapproval letters, and the work schedules of defendant and her assistant, and prepared charts listing each day that the daycare was open and defendant's billings for those dates.  Based upon that information, the investigator created charts purporting to illustrate the amounts that defendant allegedly "overbilled" DSS, which were admitted in evidence over defendant's objection.  According to the investigator, defendant submitted vouchers for monies to which she was not entitled because (1) she billed for hours when neither she nor her certified assistant were at the daycare, and (2) she billed for hours when the children were not at the daycare

By its verdict, the jury found defendant guilty of grand larceny

as charged in count one of the indictment, falsifying business records as charged in counts 5 through 11 of the indictment, and offering a false instrument for filing as charged in counts 15 through 21 of the indictment.  The jury acquitted defendant of the remaining counts of falsifying business records (counts 2 through 4) and offering a false instrument for filing (counts 12 through 14).

On appeal, defendant contends that the judgment must be reversed and the indictment dismissed because, inter alia, the indictment was rendered duplicitous and/or multiplicitous by the evidence adduced at trial.  We agree.  "Prosecutors and grand juries must steer between the evils known as 'duplicity' and 'multiplicity.'  An indictment is duplicitous when a single count charges more than one offense . . . It is multiplicitous when a single offense is charged in more than one count . . . A duplicitous indictment may fail to give a defendant adequate notice and opportunity to defend; it may impair his [or her] ability to assert the protection against double jeopardy in a future case; and it may undermine the requirement of jury unanimity, for if jurors are considering separate crimes in a single count, some may find the defendant guilty of one, and some of the other.  If an indictment is multiplicitous it creates the risk that a defendant will be punished for, or stigmatized with a conviction of, more crimes than he [or she] actually committed" (*People v Alonzo*, 16 NY3d 267, 269).  An indictment that is not duplicitous on its face may be rendered so based upon the trial evidence (*see People v Bennett*, 52 AD3d 1185, 1186, *lv denied* 11 NY3d 734; *People v Bracewell*, 34 AD3d 1197, 1198).

Here, the People correctly concede that counts 5 through 7, 9, 15 through 17, and 19 of the indictment are duplicitous and multiplicitous inasmuch as they are based on "distinct but not identifiable vouchers."  Those counts are all based on the same time period and the same vendor number and, according to the People, there is no way to identify which voucher refers to which count (*see generally People v Burnett*, 306 AD2d 947, 947-948).  In addition, the People correctly concede that the conviction of counts 11 and 21 should be reversed and those counts dismissed because there is no proof in the record to support the conviction of those counts.  Those counts are based on the so-called "10th voucher," which was not submitted in evidence and about which there was no testimony.  Although defendant's contention with respect to counts 11 and 21 is unpreserved for our review because her motion for a trial order of dismissal was not specifically directed at that deficiency (*see People v Gray*, 86 NY2d 10, 19), we nonetheless reach that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

With respect to the remaining counts of the indictment, we agree with defendant that counts 8, 10, 18, and 20 of the indictment were rendered duplicitous by the trial evidence (*see Bennett*, 52 AD3d at 1186; *Bracewell*, 34 AD3d at 1198).  As noted above, the People alleged that defendant submitted vouchers for monies to which she was not entitled because, at various dates and times, she (1) billed for hours when neither she nor her certified assistant were at the daycare, and (2) she billed for hours when the children were not at the daycare.

There is no basis in the record to determine, with respect to each of those counts, whether the jury convicted defendant based upon the first act (billing for hours when the children were watched by uncertified assistants) or the second act (billing for hours when the children were not at daycare), or whether certain jurors convicted defendant upon the former and others upon the latter.  Thus, "it is impossible to verify that each member of the jury convicted defendant for the same criminal act" (*People v Dalton*, 27 AD3d 779, 781, *lv denied* 7 NY3d 754, *reconsideration denied* 7 NY3d 811).

Finally, we agree with defendant that her conviction of grand larceny must also be reversed.  Count one of the indictment alleges that, between October 1, 2007 and July 30, 2008, defendant "stole property having a value in excess of [$3,000], to wit:  a sum of money, belonging to [DSS]."  Under Penal Law § 155.05 (1), "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself [or herself] or to a third person, he [or she] wrongfully takes, obtains or withholds such property from an owner thereof."  Larceny includes "obtaining property by false pretenses" (§ 155.05 [2] [a]).  A defendant commits larceny by false pretenses when he or she "obtain[s] possession of money of another by means of an intentional false material statement about a past or presently existing fact upon which the victim relied in parting with the money" (*People v Starks*, 238 AD2d 621, 622, *lv denied* 91 NY2d 836; *see People v Churchill*, 47 NY2d 151, 157-158).

Here, the People alleged that defendant committed larceny by false pretenses by charging for times when unlicensed assistants were watching the children in violation of OCFS regulations, and by billing for times when the children were not receiving daycare services.  We question whether submitting vouchers for daycare services rendered by an uncertified assistant falls within the definition of larceny.  OCFS's regional manager testified that, although it is a "regulatory violation" for an uncertified assistant to watch children at a group day care, the regulations do not state that daycare providers are not permitted to bill for services rendered by an uncertified assistant.  Indeed, the DSS special investigator referred to those hours as "billable" on his charts, although unauthorized by the regulations.

Even assuming, arguendo, that billing for services provided by an uncertified assistant constitutes a "wrongful[ ] tak[ing]" within the meaning of Penal Law § 155.05 (1), we note that "[c]onduct which is wrongful in the civil context is not necessarily 'wrongful' within the meaning of the larceny statutes" (*People v Foster*, 73 NY2d 596, 603-604; *see Churchill*, 47 NY2d at 158).  As the Court of Appeals explained in *Foster*, "[t]he courts and the Legislature have been reluctant to elevate civil wrongs to the level of criminal larceny . . . , *particularly when the conduct arises out of legitimate business activities where there are often close questions as to whether the defendant acted intentionally or was merely incompetent . . .* In such cases, whenever the Legislature has found that certain acts performed in these contexts warrant criminal punishment, it has generally identified the prohibited conduct quite specifically . . . in order to

protect the truly inept or victims of spite from being branded as criminals" (73 NY2d at 604 [emphasis added]).

Here, we agree with defendant that her alleged regulatory violation cannot form the basis for criminal liability under the larceny statute. Article 6 of the Social Services Law, which governs child care facilities and the regulations promulgated thereunder (18 NYCRR part 413 *et seq.*) set forth civil penalties for statutory or regulatory violations (*see e.g.* Social Services Law § 390 [10]; 18 NYCRR 413.3 [1] [a] [1], [4], [5]). Although 18 NYCRR 413.3 (1) (a) (9) provides that OCFS may request that the Attorney General "take such action as is necessary to collect civil penalties, *seek criminal prosecution*, or to bring about compliance with any outstanding hearing decision or order" (emphasis added), we conclude that the reference to criminal prosecution merely reserves OCFS's right to seek prosecution for otherwise criminal conduct. It does not criminalize the violation of regulations relating to the proper supervision of children in group daycare (*see generally People v Caswell-Massey Co.*, 6 NY2d 497, 501). Thus, defendant's violation of 18 NYCRR part 416 cannot supply the basis for a larceny prosecution (*cf. People v Kyu H. Shin*, 181 Misc 2d 751, 754-755; *see generally Foster*, 73 NY2d at 604).

There is no question that the People's other theory of the case, that defendant billed for services not actually rendered, would fall within the definition of larceny by false pretenses (*see e.g. People v McDonald*, 215 AD2d 504, 504, *affd* 88 NY2d 281; *see generally Churchill*, 47 NY2d at 157-158; *Starks*, 238 AD2d at 622). The People, however, argued and produced evidence supporting both theories of larceny at trial, and there is no way to determine whether the jury convicted defendant on the ground that she billed DSS for services she did not in fact provide or on the ground that she billed DSS for services provided by unlicensed caregivers. Because we cannot be certain whether the jury convicted defendant on the basis of non-criminal acts, i.e., submitting vouchers to DSS for daycare provided by uncertified assistants, or whether the jurors lacked unanimity with respect to the acts for which she was convicted, we conclude that her conviction of grand larceny must be reversed and count one of the indictment dismissed (*see generally Alonzo*, 16 NY3d at 269).

Entered:  May 9, 2014                    Frances E. Cafarell
                                         Clerk of the Court