■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAURO RICCHIU-TI, Appellant. — Appeal by defendant from a judgment of the County Court, Suffolk County (Best, J.), rendered January 8, 1982, convicting him of grand larceny in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. Up until July 19, 1980, defendant was the plant engineer for the Deer Park plant of Germaine Monteil Cosmetiques, Inc. (hereinafter Germaine). He had been employed by Germaine since 1967 or 1968. On July 19, 1980, he was accused of stealing eight boxes of cosmetics from Building No. 450 at the Deer Park plant, and, as a result, his employment with Germaine ended. Defendant was a senior management employee. His immediate supervisor, Joseph Semoff, testified that, as a senior employee, defendant was allowed to take merchandise for family use and a few pieces for charitable distribution. However, if the charitable donation was to be for more than 10 or 15 items, a letter from the charity with Semoff's approval was necessary. Prior to trial, Semoff had examined the contents of the eight boxes defendant allegedly stole. There were approximately 3,000 assorted pieces in the boxes, worth about $18,500. He stated that he had no recollection of seeing a letter from a charity requesting these items, and that, in any case, under no circumstances would he have approved a donation of that number of items. Furthermore, he would never have permitted a contribution of the type of cosmetics in the boxes, which were classified as "active" products, still available on Germaine's order sheets. Defendant testified that in addition to his regular duties, he was designated by Semoff as being the person responsible for distribution of merchandise "for charitable organizations, for friends of the company, for [Semoff's] personal friends, for vendors that we did business with and for other people who may have been of good use to the company". This was confirmed by other defense witnesses. According to defendant, he had "carte blanche" authority from Semoff to authorize gifts and donations, and no

written request was necessary. Defendant stated that he had received a request for merchandise from a charity in New Jersey, the Raritan Valley Unit of the Retarded Children's Association, and the merchandise in question was taken to fill that request. For each of the seven preceding years, that particular charity had requested and received a donation from Germaine. Defendant testified that, in fact, he had loaded only two boxes into the trunk of his car and that the other six were not there when he left for questioning at the office of John Comiskey, Germaine's security manager. In defendant's view, the accusation of theft and the addition of the six boxes was the culmination of a long-standing personal feud that he had with the executive vice-president of the company, Mr. Curtis. In fact, Semoff confirmed that he had earlier told defendant's wife that Curtis was seeking a way to get rid of defendant. Comiskey testified that on July 19, 1980, he placed Building No. 450 under his personal surveillance. At about 4:00 P.M. he observed defendant come out of the building with two cartons on a hand truck and load them into the trunk of his car. According to Comiskey, defendant made three more trips into the building, each time returning with two cartons which he placed in his trunk. After the eighth box was loaded, Comiskey revealed himself and confronted defendant. The latter insisted that he had authority to remove the boxes of merchandise. Comiskey then had defendant accompany him to the former's office where he was questioned at length. According to Comiskey, defendant finally admitted that he was not authorized to take property from any building, that he had been stealing from Germaine for over a year, and that he would assist Germaine in the investigation of thefts in return for not being criminally prosecuted. Defendant categorically denied ever making those statements. Over defense objection, Comiskey was allowed to testify that, prior to July 19, he had had a meeting with Suffolk County detectives on the subject of employee involvement in large-scale thefts occurring at the Deer Park plant. Comiskey also testified, over objection, about an unrelated, earlier incident in Nassau County where approximately $20,000 worth of Germaine merchandise, apparently from Building No. 450, was recovered. Comiskey then met with an informant and obtained further information about thefts at Germaine, and, as a result, he set up his surveillance at Building No. 450. Defendant's objection to this testimony, as with the other testimony concerning large-scale thefts, was overruled on the grounds that it aided in "laying a foundation" as to why Comiskey was conducting an investigation and to explain why Building No. 450 was singled out for surveillance. The court refused to strike this testimony except that the jury was told to disregard Comiskey's statement that the incident in Nassau County resulted in the arrest of another person. In its instructions to the jury, the court, without objection or request to charge, set forth the elements of the crime to be proven, as follows: "Section 155.02, 2 (a) and 155.35 of the Penal Law of our state, insofar as they are applicable, reads [sic] as follows: A person is guilty of Grand Larceny in the 2nd Degree when he steals property and when the value of the property exceeds $1,500.00. In order for you to find the defendant guilty of this crime, the People are required to prove, from all of the evidence in the case beyond a reasonable doubt, each of the following five elements: One, that on July 19th, 1980, in the County of Suffolk, the defendant stole property, to wit, cosmetics. According to law, a person * * * steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof. To take property means to exercise the control over it permanently or for such an extended period or under such circumstances as to acquire the major portion of its economic value. The second

element is that the defendant stole such property with the intent to deprive another of it or to appropriate it to himself or to a third person. According to law, a person acts with intent to deprive another of property or to appropriate it to himself or to a third person when his conscious aim or objective is to deprive another of property or to appropriate it to himself or to a third person * * * The third element is as follows: That the defendant stole such property from Germaine Monteil Cosmetiques Corporation and that Germaine Monteil was an owner of the property. According to law, an owner means any person who has a right to possession superior to that of the taker. The fourth element is as follows: That the defendant did not have authority of law or the consent of the owner to take, obtain or withhold such property. The fifth is that such property exceeded in value $1,500.00. Therefore, with respect to the indictment, if you find that the People have proved, to your satisfaction beyond a reasonable doubt, each of these five elements as I have just explained them, one, that on or about July 19th, 1980, in the County of Suffolk, the defendant stole property, to wit, cosmetics; two, that the defendant stole such property with an intent to deprive another of it or to appropriate it to himself or a third person; three, that the defendant stole such property from Germaine Monteil Cosmetiques Corporation and that Germaine Monteil Corporation was the owner thereof; and, four, that the defendant did not have the authority of law or the consent of the owner to take, obtain or withhold such property; and, five, that such property exceeded in value $1,500.00, then you may find the defendant guilty of the crime of Grand Larceny in the 2nd Degree." During the jury's deliberations, this instruction was read back to the jury at its request. Early during the second day of deliberations a verdict of guilty was reached. In the interest of justice we reverse. Three errors occurred at trial which, in our opinion, cumulatively deprived defendant of a fair trial and which may well have tainted the jury's deliberations. Larceny is, of course, an intent crime; intent must be proven with respect to every element thereof (Penal Law, §§ 155.05, 155.15, subd 1; see *People v Guzman,* 68 AD2d 58). Thus, in addition to having to prove an intent to deprive another of property or to appropriate the same to himself or to a third person, the People must show that the defendant wrongfully intended to take the property *(People v Olivo,* 52 NY2d 309). That is, it must be proven beyond a reasonable doubt that the defendant intended to exercise "dominion and control [over the property] wholly inconsistent with the continued rights of the owner" *(People v Olivo, supra,* p 318). A component of this burden is that the People must show that the defendant was aware that his act of taking the owner's property was without the latter's authority or consent. In other words, an appropriation "under a claim of right made in good faith" (Penal Law, § 155.15, subd 1) should be considered a defense and not an affirmative defense; the burden is on the People to disprove such an allegation (see *People v Chesler,* 50 NY2d 203). The charge to the jury in this case contains only one reference to wrongful taking. At no time did the court spell out what a wrongful taking is, nor did it explain that the burden was on the People to show that defendant intended a wrongful taking. Intent was only referred to in reference to depriving or appropriating. As defendant states on appeal, he has always acknowledged that he intended to "appropriate" the property (see Penal Law, § 155.00, subd 4). However, his defense was and is that he thought that he had the authority to do so. That possibility, which, if not disproven, would exonerate defendant even if he was mistaken as to his actual authority, simply is not covered within the parameters of the charge as given. The issue of authority, as with other factual matters to be determined by the jury, turned on the credibility of the witnesses. During his summation, the prosecutor improperly intruded on the jury's domain in this

regard by stating that defendant had "lied" (*People v Whitehurst,* 87 AD2d 896; *People v Alston,* 77 AD2d 906; *People v Goggins,* 64 AD2d 717). Later on he told the jury that the People's witnesses were "[c]redible", had "no reason to lie", and "weren't lying", and said that if the jurors "were to believe anything that the defendant has said, you would have to totally disregard every witness that testified in this case. You would have to say that every witness in this case that has testified has lied". This court has repeatedly disapproved of a prosecutor making such statements (*People v Whitehurst, supra; People v Santiago,* 78 AD2d 666; *People v Alston, supra; People v Schaaff,* 71 AD2d 630). In a case involving close factual issues, such as this one, bolstering comments such as these will be subject to review despite the lack of objection (*People v Santiago, supra*). The third error which concerns us is the testimony concerning the earlier large-scale thefts. Under the *Molineux* rule (*People v Molineux,* 168 NY 264), evidence of uncharged crimes is not admissible if the sole purpose is to show criminal disposition. Evidence of other crimes is proper on the People's case, however, if sufficiently probative of other factors, such as "motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the guilty party" (*People v Allweiss,* 48 NY2d 40, 47). Whether the *Molineux* rule applies turns on an evaluation of the probative value of the evidence versus the potential for prejudice (*People v Santarelli,* 49 NY2d 241). When such evidence is admitted, a proper limiting instruction must be given describing the purpose for which it was received (*People v Beam,* 57 NY2d 241; *People v Rivers,* 85 AD2d 674). The introduction of testimony as to past thefts at Germaine had a potential for prejudice. While the People did not directly tie defendant to those thefts, that possibility was certainly suggested. At least some of the past thefts appeared to be from Building No. 450 to which defendant was closely connected. Defendant's alleged confession to Comiskey included an admission of past thefts and a promise to aid in the investigation. The contention that testimony of the past thefts was needed so that the jury could understand why Comiskey was making an investigation is without merit. No foundation was needed. His action in putting Building No. 450 under surveillance did not have to be explained; it was his job to watch for thefts. No limiting instruction was given, only a partially curative instruction as to one unrelated arrest. Even supposing that this evidence was needed as background, the jury should have been told that was its sole purpose and that nothing should be inferred from it in regard to defendant. A new trial is necessary because of the errors discussed above. We have considered defendant's other contentions on appeal and find them to be without merit. Damiani, J. P., Gulotta, O'Connor and Brown, JJ., concur.