■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LESTER BLOWE, Also Known as BARRY CHAPMAN, Appellant.— Appeal by the defendant from a judgment of the Supreme Court, Kings County (Owens, J.), rendered October 16, 1984, convicting him of rape in the first degree, robbery in the first degree, and burglary in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and as a matter of discretion in the interest of justice, and a new trial is ordered.

In this single-witness identification case, the complainant testified that she was raped and robbed by the defendant at gunpoint at 3:00 P.M. on December 31, 1982, in her apartment. On January 11, 1983, the complainant identified a man in the subway and had him arrested. This man was the defendant's brother, and, after viewing a six-photograph array, the complainant identified the defendant and his brother was released. Approximately 3½ months later, after viewing a lineup for "a brief time", the complainant identified the defendant.

As a result of three errors which occurred at the *Wade* hearing and during the trial which cumulatively deprived the defendant of a fair trial, his conviction must be reversed. The errors in this case involved (1) the direction by the trial court to commence jury selection prior to the completion of a *Wade*

hearing, (2) the refusal by the court to grant the defendant a one-day adjournment to attempt to bring in a material witness, and (3) the prosecutor's summation.

After having commenced the *Wade* hearing on Thursday, August 30, 1984, the prosecutor represented that the complainant would be available to testify on the following day. The next morning, however, the prosecutor advised the court that he could not locate the complainant and thus requested a continuance until Tuesday, September 4, 1984, following the Labor Day weekend. The court denied the request and directed that jury selection proceed immediately. The defense counsel objected and argued that the complainant's testimony and the court's ruling on the motion to suppress would affect the manner in which he conducted his voir dire. This objection was overruled. A panel of jurors was sworn to truthfully answer questions relative to their qualifications, and instructed, and four jurors were selected. On the following Tuesday, the complainant appeared in court, the *Wade* hearing was concluded and the court denied a motion to suppress in all respects. After the court's ruling, the voir dire was continued and completed.

During the trial, the prosecutor advised the court that he had been unable to call his final witness, Police Officer Sharon Jordan. The court granted the People's request for a continuance from Thursday, September 6, 1984, to Friday, September 7, 1984, to afford the People an opportunity to produce Officer Jordan. On Friday, the prosecutor advised the court that Officer Jordan's father died at the beginning of the trial, and she was at his funeral in North Carolina. The defense attorney stated that if the People had not called Officer Jordan, he would have. The court ordered a continuance until Monday, September 10, and instructed both parties to complete their cases on that date. On Monday, the prosecutor informed the court that he had been unable to reach Officer Jordan but that he had been told that she would return the next day. The defense counsel asked for an adjournment for one day until Tuesday, September 11, so that he could attempt to reach Officer Jordan. The court denied this request on the ground that the defense counsel made no effort to subpoena her, and the case was concluded. The defense counsel wanted to adduce proof through Officer Jordan that the complainant had made certain statements to the officer which were inconsistent with her trial testimony, and which contradictory statements were noted in the officer's complaint report.

The direction by the trial court to commence the voir dire of

the jury prior to concluding the pretrial *Wade* hearing violated CPL 710.40 (3), which provides as follows: "When the motion [to suppress] is made before trial, the trial may not be commenced until determination of the motion".

CPL 1.20 (11) provides that "A jury trial commences with the selection of the jury". Within the purview of CPL 710.40 (3), the "commencement" of the trial is the start of jury selection *(see, People v Sanchez,* 65 NY2d 436; *People v Aiken,* 45 NY2d 394). Thus, the court violated the provision of CPL 710.40 (3) when it compelled counsel to commence jury selection prior to the conclusion of the suppression hearing. The court compounded this error in that it forced defense counsel to commence jury selection prior to the time the complainant testified at the *Wade* hearing. Even though the court did complete the suppression hearing at the following court session, and the defense counsel was permitted thereafter to continue and conclude the voir dire, this unorthodox procedure was, in our view, preserved error which was not harmless. We cannot speculate on the extent of prejudice to the defendant by this procedure, since the effect of compelling the defendant's counsel to commence voir dire prior to conclusion of the suppression hearing cannot be reasonably appraised.

Further, the trial court abused its discretion when it denied the defendant's request for a one-day adjournment to obtain the presence of Officer Jordan. That the officer did not return the following day is immaterial to this ruling. The short adjournment should have been granted; and, on the following day, the court could have ruled on the facts then before it. The law is well established that the defendant has a fundamental right to call a witness in his own behalf *(Chambers v Mississippi,* 410 US 284; *People v Gilliam,* 37 NY2d 722, *revg* 45 AD2d 744 *on dissenting opn of Hopkins, J; People v Lloyde,* 106 AD2d 405). While, as a general rule, the granting or denial of a request for an adjournment is within the sound discretion of the Trial Judge *(see, People v Spears,* 64 NY2d 698, 700), in this case the prosecutor had stated that he would call Officer Jordan and the defendant, arguably, relied on that statement. It is clear that Officer Jordan's testimony would have been material and noncumulative. Since defense counsel could not introduce Officer Jordan's complaint report, the alleged inconsistencies in the statements of the complaining witness were not placed before the jury by either the police officer to whom she made these statements or by the official police report. These inconsistent statements would have impeached the complainant's credibility and, specifically, her

identification testimony which was the crucial issue in this case. Indeed, on cross-examination, the complaining witness denied making the inconsistent statements set forth in Officer Jordan's complaint report, and the defense counsel could not prove otherwise.

Finally, the cumulative effect of the prosecutor's comments in summation exceeded proper bounds. He clearly and expressly vouched for the complainant's truthfulness in again and again arguing that she was "credible", testified "forthrightly" was "worthy of your belief", was a "quality witness", was "an honest person", a "person of integrity", "is both truthful and accurate, worthy of your belief" and "her believability would sing out to you", and stated:

"You tell me, wasn't she credible?

"I suggest to you, based on the evidence, very much so".

This summation, taken in its entirety, presented the classic example of a prosecutor improperly vouching for the complainant (see, People v Farmer, 122 AD2d 801; People v Ricchiuti, 93 AD2d 842; People v Whitehurst, 87 AD2d 896), which vouching, over objection, was repeatedly reinforced and reemphasized.

In view of the closeness of the factual issue as to identification in this single witness case, the cumulative effect of these three errors served to deprive the defendant of a fair trial, may well have tainted the jury's deliberations, and mandates reversal of the judgment and a new trial (see, People v Shanis, 36 NY2d 697; People v Ricchiuti, supra; People v Blackman, 88 AD2d 620).

Since this case requires a new trial, in the event the defendant is convicted again, we note that the trial court did not act improperly in imposing consecutive sentences for the defendant's rape and robbery convictions (see, Penal Law § 70.25 [2]; People v Dorsey, 79 AD2d 611; People v McMillan, 61 AD2d 800). While these crimes arguably both occurred in the course of a "single extended transaction", they clearly resulted from separate acts on the part of the defendant (People v Brathwaite, 63 NY2d 839, 843).

We have reviewed the defendant's other contentions and find them to be without merit. Mollen, P. J., Bracken and Brown, JJ., concur.

Spatt, J., dissents and votes to modify the judgment appealed from, so as to provide that the terms of imprisonment imposed shall run concurrently to each other, and as so modified to affirm the judgment appealed from, with the

following memorandum: Initially, although my colleagues in the majority properly stress that this is a single-witness identification case, the facts in this case are somewhat unusual. The crime occurred on December 31, 1982, in the apartment of the complaining witness. On January 11, 1983, the complaining witness saw someone at the Nostrand Avenue subway station who resembled the defendant and on her complaint, that person was arrested. The person she spontaneously identified was the brother of the defendant, who strongly resembled the defendant. Thereafter, the complaining witness realized her mistake and identified the defendant in a photographic array and in a lineup.

The direction by the trial court to commence the voir dire of the jury prior to concluding the pretrial *Wade* hearing constituted a violation of CPL 710.40 (3) and is a practice to be avoided *(see, People v Hibbler,* 111 AD2d 67; *People v Smalls,* 111 AD2d 38, 39-40 [Rosenberger, J., concurring]). However, the prejudice suffered by the defendant as a result of this procedure was minimal and does not warrant reversal. The *Wade* hearing was concluded and a decision on the motion to suppress was rendered prior to continued jury selection, and the defendant was not deprived of the right to question the jurors regarding the identification issue. Moreover, although four jurors were selected prior to the conclusion of the *Wade* hearing, the record reveals that none were sworn at that time, and the defendant had the opportunity to question all of the jurors after the determination of the admissibility of the identification testimony and prior to their being sworn. Absent a demonstration of any actual prejudice in this regard, the commencement of voir dire prior to the conclusion of the *Wade* hearing did not rise to the level of a violation of the defendant's constitutional rights to due process and effective assistance of counsel *(cf., Rosales-Lopez v United States,* 451 US 182; *Ham v South Carolina,* 409 US 524, 528).

Further, the trial court did not abuse its broad discretion in denying the defendant's request for an adjournment to obtain the presence of Police Officer Jordan as a witness at trial. "The granting of an adjournment for any purpose is a matter resting within the sound discretion of the trial court" *(Matter of Anthony M.,* 63 NY2d 270, 283). It is well established that a request for a short adjournment to produce a witness whose testimony "is really material and appears to the court to be so" should be granted *(People v Foy,* 32 NY2d 473, 476; *see also, People v Spears,* 64 NY2d 698). In this case, the discrepancies in what the complainant apparently told Police Officer

Jordan as opposed to her actual trial testimony were not material and would not have affected her credibility as to either the commission of the crime or the identification of the defendant. In any event, the alleged inconsistencies in the complainant's testimony were brought out in detail during her cross-examination and during the defense counsel's summation. Also, it is noted in this regard that, during the trial, it was first ascertained that Officer Jordan was out of the State indefinitely on a personal matter, and it would have been difficult to hold the jury for an unknown period of time, which turned out to be two weeks in duration, until Officer Jordan returned to New York.

The prosecutor's remarks in summation must be evaluated in comparison to those of the defense summation which, in this case, directly placed in issue and questioned the credibility of the complaining witness (see, People v Anthony, 24 NY2d 696; People v Torres, 121 AD2d 663; People v Blackman, 88 AD2d 620, 621). In evaluating the prosecutor's summation in comparison to that of the defense, the record reveals that the comments made by the prosecutor concerning the credibility of the complaining witness constituted a fair response to the defense summation (see, People v Arce, 42 NY2d 179; People v Marks, 6 NY2d 67, cert denied 362 US 912; People v Singleton, 121 AD2d 752, 753; People v Lowen, 100 AD2d 518, 520), did not exceed the broad bounds of rhetorical comment permissible in closing argument (see, People v Galloway, 54 NY2d 396), and did not deprive the defendant of a fair trial (see, People v Colon, 122 AD2d 151).

The trial court's imposition of consecutive sentences on the defendant for his rape and robbery convictions was not illegal (see, Penal Law § 70.25 [2]; People v Dorsey, 79 AD2d 611; People v McMillan, 61 AD2d 800). While these crimes arguably both occurred in the course of a "single extended transaction", they clearly resulted from separate acts on the part of the defendant (People v Brathwaite, 63 NY2d 839, 843). However, under the circumstances present in this case, the sentence imposed upon the defendant of a term of imprisonment of 10 to 20 years to run consecutively to terms of imprisonment of 6 to 12 years was unduly harsh, and I would have modified to impose concurrent terms of imprisonment.