[928 NE2d 1041, 902 NYS2d 844]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSHUA M. ZONA, Respondent.

Argued March 24, 2010; decided May 6, 2010

## POINTS OF COUNSEL

*R. Michael Tantillo, District Attorney,* Canandaigua, for appellant. The trial court properly declined to instruct the jury on the claim of right defense contained in Penal Law § 155.15 (1). (*People v Chesler,* 50 NY2d 203; *People v Green,* 5 NY3d 538; *People v Reid,* 69 NY2d 469; *People v Baroody,* 59 AD3d 1111; *People v Watts,* 57 NY2d 299; *People v Butts,* 72 NY2d 746; *People v Mitchell,* 82 NY2d 509; *People v Chang,* 12 Misc 3d 134[A], 2006 NY Slip Op 51190[U]; *People v Geppner,* 122 AD2d 394; *People v Cunningham,* 12 AD3d 1131.)

*J. Scott Porter,* Seneca Falls, for respondent. No legal impediment prevents Joshua Zona from raising a claim of right defense and a reasonable view of the evidence supports an inference that Zona acted in good faith. (*Mathews v United States,* 485 US

58; *People v Chesler*, 50 NY2d 203; *A.J. Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574; *People v Garson*, 6 NY3d 604; *People v Green*, 5 NY3d 538; *People v Ricchiuti*, 93 AD2d 842; *People v Ace*, 51 AD3d 1379, 11 NY3d 733; *People v Watts*, 57 NY2d 299; *People v Torre*, 42 NY2d 1036; *People v Padgett*, 60 NY2d 142.)

## OPINION OF THE COURT

CIPARICK, J.

The issue raised by this appeal is whether the evidence presented at trial, viewed in the light most favorable to defendant, supported a good faith claim of right jury instruction. We conclude that defendant was entitled to assert this defense and that County Court erred when it denied defendant's request to charge.

This case centers around the removal of various items of property from a surplus warehouse used by the Seneca County Sheriff's Department. In October or November 2005, Undersheriff James Larson, one of the highest ranking members of the Seneca County Sheriff's Department, instructed defendant, a deputy sheriff, and two other deputies to transfer property stored in the Sampson State Park warehouse to a warehouse located at the old Army Depot in Romulus. Larson supervised and assisted the deputies as they transferred the property using their personal vehicles to the new location. The bulk of the property stored at the Sampson warehouse was described at trial as "old," "wrecked," "surplus stuff," and a "lot of junk." According to defendant's later statement to an investigator, Larson "told us that he was taking a canoe home and he told us we could take what we want." Defendant took five brand new tires, a boat that contained a bullet hole, and a filing cabinet. In addition to the canoe, Larson took some old military lights, and an electric lawn mower for himself. Two of the other sheriffs supervised by Larson took canoes.

In late November or early December 2005, defendant spoke with an employee of Trombley Tire and Auto to inquire whether he could trade in the five tires he removed from the warehouse for a set of four B.F. Goodrich tires that would fit his sport-utility vehicle. The employee referred defendant to the owner of the shop. Defendant negotiated with the owner, traded in the five tires from the warehouse, and received a $375 credit toward the purchase of the B.F. Goodrich tires. Before finalizing the purchase, defendant spoke with one of his colleagues and

discussed that he was thinking about buying the B.F. Goodrich tires. Defendant's colleague wondered how he was able to afford such expensive tires and defendant indicated that Trombley Tire was giving him a good deal because he had solved several bad check cases for the shop.

The day after defendant purchased the B.F. Goodrich tires, Trombley Tire sold four of the five tires it had acquired from defendant to one of its customers. Later that month, investigators with the Seneca County Sheriff's Department retrieved the fifth tire from Trombley Tire, as it had not yet been sold.

According to defendant's statement, in January 2006, he spoke with a coworker who "told me that Jim Larson apparently did not have the authority to tell us we could take anything from the warehouse and that it needed to be put back in there." When defendant learned this, he promptly returned the boat and the filing cabinet to the new storage facility. Defendant then attempted to repurchase the five tires he had previously traded in, but was told that they had already been sold.

On January 24, 2006, defendant went to another tire shop to purchase replacement tires, but was informed by the service manager that the tires defendant desired were no longer in stock. The service manager convinced defendant to purchase five comparable tires—at a cost that exceeded the trade-in value of the tires he removed from the warehouse. The same day defendant purchased these tires he placed them in the new storage facility beneath other objects.

A little over a week later, in the early morning hours of February 3, 2006, a fire broke out at the new storage facility. Defendant was only one of four individuals who had keys to the facility. An investigator with the New York State police interviewed defendant the following day. Defendant fully cooperated with the investigator and explained he had no information pertaining to the fire but admitted that he had removed property from the old warehouse facility. The investigator prepared a typewritten statement, signed by defendant, detailing the information provided to him during the interview. Defendant described the property he removed with Larson's permission and explained that he had returned it to the new storage facility once he learned that Larson did not have the authority to dispose of the property.

Two other investigators also interviewed defendant. According to one of these investigators, defendant orally told him that

Larson did not directly state, but only implied, that the other deputies could take property from the old warehouse for themselves.

Following this lengthy investigation, a grand jury indicted defendant for one count of petit larceny (Penal Law § 155.25). Prior to trial, he requested a dismissal of the indictment. Defendant argued that he honestly believed that he could take the property and that the People's failure to properly instruct the grand jury on the good faith claim of right defense unfairly prejudiced him (*see* Penal Law § 155.15 [1]). County Court reviewed the grand jury minutes and denied defendant's motion (18 Misc 3d 1117[A], 2008 NY Slip Op 50107[U]). The court held that the claim of right defense was inapplicable because defendant could not assert that he had at any time owned or possessed the property procured from the storage facility. The case proceeded to trial and defendant, both at the conclusion of the People's case and at the charge conference, requested that County Court instruct the jury on the claim of right defense. County Court denied the requests.

The jury found defendant guilty of petit larceny and he appealed. At the Appellate Division, defendant argued for both a reversal of the conviction and a dismissal of the indictment. A divided Appellate Division reversed defendant's conviction and ordered a new trial, concluding that there was a reasonable view of the evidence that would allow a jury to find that defendant had a good faith claim of right to the property he removed from the warehouse (60 AD3d 1279 [4th Dept 2009]). The dissenting justices, on the other hand, held that no reasonable view of the evidence supported this defense (*id.* at 1281-1282). The court did not address defendant's argument concerning the sufficiency of the legal instructions given to the grand jury. A Judge of this Court granted the People leave to appeal (12 NY3d 922 [2009]) and we now affirm.[1]

Our analysis begins with Penal Law § 155.15 (1), which provides "[i]n any prosecution for larceny committed by trespassory taking or embezzlement, it is an affirmative defense that the property was appropriated under a claim of right made in good faith." However, in evaluating the constitutionality of this statute, we have held that a good faith claim of right is properly

---

1. Although defendant moved for the dismissal of the indictment below, he did not cross-appeal here. The propriety of the grand jury proceeding is thus not before us and the focus of our analysis is limited to whether defendant was entitled to assert the claim of right defense at trial.

a defense—not an affirmative defense—and thus, "the people have the burden of disproving such defense beyond a reasonable doubt" (Penal Law § 25.00 [1]; *see People v Green*, 5 NY3d 538, 542 [2005], citing *People v Chesler*, 50 NY2d 203, 209-210 [1980]).

In determining whether to instruct a jury on a claimed defense, the court must view the evidence adduced at trial in the light most favorable to the defendant (*see People v Butts*, 72 NY2d 746, 750 [1988]; *People v Steele*, 26 NY2d 526, 529 [1970]; *see also Mathews v United States*, 485 US 58, 63 [1988] ["a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor"]). A failure to do so constitutes reversible error (*see People v Watts*, 57 NY2d 299, 301 [1982]). Of course, it is fundamental that a "jury may accept portions of the defense and prosecution evidence or either of them" (*People v Asan*, 22 NY2d 526, 530 [1968]). "Therefore, inconsistency in claimed defenses or even between a defendant's testimony and a defense 'should not deprive [the] defendant of the requested charge' if the charge would otherwise be warranted by the evidence" (*Butts*, 72 NY2d at 750, quoting *People v Padgett*, 60 NY2d 142, 146 [1983]).

Applying these principles, we find that there was evidence in the record to support defendant's good faith claim of right defense. We note that defendant's statement, if credited, establishes that Larson, one of the highest ranking officials in the Seneca County Sheriff's Department, gave defendant and his colleagues permission to take whatever property they wanted. Indeed, it also indicates that two of his colleagues also relied on Larson's representation and took property, and that Larson procured several items of property for himself as well. Moreover, the evidence demonstrates that the sheriffs used their personal vehicles to move the property and that most of the property stored at this surplus warehouse was described as junk, old, and wrecked.

Furthermore, we reject the People's argument that there are no circumstances in which a public servant, such as defendant, could have a good faith belief that he was entitled to keep public property. It may be that a public servant could have no reasonable basis for such a belief, but subjective good faith, not reasonableness, is the test. Thus, on this record, we hold that a trier of fact could find that defendant had a good faith belief that Larson had the authority to dispose of the property stored

in the surplus warehouse and that defendant could retain some of that property for his personal use.

Likewise, we reject the notion that a defendant must establish that he previously owned or possessed the property at issue in order to assert the claim of right defense.[2] We note that there is nothing in the statutory language in Penal Law § 155.15 (1) that requires us to interpret this defense so narrowly. Rather, the defense merely requires a good faith belief "that the property was appropriated under a claim of right" (Penal Law § 155.15 [1]). Lower court decisions reflect our interpretation of this defense. For example, in *People v Ricchiuti* (93 AD2d 842 [2d Dept 1983]), the defendant, an employee of a cosmetics company, was indicted for grand larceny for allegedly stealing large quantities of merchandise from his employer (*see id.* at 842). At trial, defendant did not attempt to establish his ownership in the company's merchandise, but rather offered evidence that his employer authorized him to distribute unlimited quantities of the merchandise to various charities, vendors, and friends of the company (*see id.* at 842-843). The Appellate Division determined that the evidence supported a claim of right defense and reversed the judgment of conviction because Supreme Court did not instruct the jury accordingly (*see id.* at 844; *see also People v Ace,* 51 AD3d 1379, 1380 [4th Dept 2008] [conviction overturned where "a reasonable view of the evidence that would enable a jury to find that defendant took the rails under a claim of right" was established after defendant's employer instructed him to take the employer-owned rails to a scrap yard]).

Furthermore, the People argue that there is no reasonable view of the evidence to support the claim of right defense because defendant concealed from his colleague the fact that he procured tires from the surplus warehouse and was planning to trade them in to reduce the cost of the B.F. Goodrich tires. The People also argue that defendant could not have had a good faith belief that he was entitled to keep the tires because, upon being told he had to return the property, he attempted to hide the replacement tires he purchased to avoid detection, evincing consciousness of guilt. This interpretation of the facts does not preclude defendant from interposing the claim of right defense, as these arguments can only be evaluated by a jury. Indeed, defendant may not have wanted his colleague to know that he

---

2. Although County Court relied upon this theory in its decision to deny defendant's request to charge, the People have not adopted this argument.

received permission from Larson to take the tires for a variety of reasons. Moreover, the fact that defendant may have surreptitiously attempted to replace the tires after he learned that he, Larson, and other deputies were being investigated does not necessarily mean that he did not possess a good faith belief in his claim of right at the time he removed the property from the surplus warehouse.

Finally, the People contend that the testimony that defendant orally told one of the investigators that Larson only implied that the deputies could take whatever property they wanted negated defendant's written statement that Larson unequivocally gave them permission to do so. Of course, the People are entitled to highlight the inconsistencies in the evidence to support their arguments to a jury. An inconsistency in the evidence only raises issues of fact, however, and does not relieve a trial judge's obligation to instruct the jury on a defense if the charge would otherwise be supported by the evidence (*see Butts*, 72 NY2d at 750). Here, there is evidence in the record to support defendant's requested charge. Accordingly, the jury should have had the opportunity to consider this defense during its deliberations.

In sum, we conclude that the evidence, viewed in the light most favorable to defendant, entitled defendant to assert a good faith claim of right defense at trial. Since County Court erred in failing to instruct the jury on this defense, defendant was deprived of a fair trial. Accordingly, the order of the Appellate Division reversing the judgment of conviction and ordering a new trial should be affirmed.

PIGOTT, J. (dissenting). I respectfully dissent because in my view no reasonable view of the evidence, even in the light most favorable to defendant, supports the defense that he took five brand new tires from a police warehouse, believing in good faith that he had the right to take them.

This case arose out of an investigation of the Seneca County Sheriff's Department, including Undersheriff James Larson, defendant Deputy Sheriff Joshua Zona, and other deputies, in connection with the removal of items from a warehouse used by the Sheriff's Department, at the Seneca Army Depot in Romulus. In the early morning of February 3, 2006, the warehouse was destroyed in a suspected arson. Because defendant was one of only four people who had access to the warehouse, he was interviewed by the New York State Police.

Defendant had no information about the fire, but he admitted that he had taken five car tires, a boat, and a filing cabinet from the warehouse.* According to defendant's statements to investigators, Undersheriff Larson took items for his personal use, and "somewhat implied" that defendant and two other deputy sheriffs could take what they wanted. Defendant stated that he traded the five tires in at Trombley Tire and Auto, receiving a credit of $375, which he used towards the purchase of tires for his pickup truck. Once he learned there was an investigation, he went out and bought similar tires and snuck them into the warehouse to cover up his actions.

Defendant was charged with and, following a jury trial, convicted of petit larceny. He now argues that his trial was unfair because County Court declined to instruct the jury on a claim of right defense.

Under Penal Law § 155.15 (1), in a prosecution for larceny committed by trespassory taking or embezzlement, an available defense is "that the property was appropriated under a claim of right made in good faith." The question before the Court in this case is whether a reasonable view of the trial evidence, viewed in the light most favorable to defendant, supports defendant's claim that he had a good faith belief in his legal right to take another's property.

The majority finds it reasonable to conclude from the evidence that defendant had an honest, if unreasonable, belief that Larson had the authority to permit him to take the property stored in the Sheriff's Department warehouse for his personal use. I believe that such an inference would be irrational, given the strong evidence that defendant was aware that his actions were illegal.

In particular, I find it striking that, in the course of a casual conversation with one of his colleagues about the new tires he had bought, defendant lied, concocting the story that he had solved bad check cases for the tire shop. If defendant had honestly believed that Larson was in a position to authorize the taking of the tires, defendant would not have kept this to himself and constructed a lie to conceal his actions.

Moreover, defendant continued to lie about his actions and try to conceal them. He bought five tires, similar to the ones he

---

* A Sheriff's Department investigator testified at defendant's trial that the property in the warehouse included not only "junk" but also "quality property" such as beds, desks, chairs, boats, and wrecked police cars that the officers would use for parts to repair damaged police vehicles.

had taken from the warehouse and traded in, from a Goodyear tire store. There, defendant lied to the service manager, saying that he needed the five tires for off-road use on a sport-utility vehicle. Defendant then placed the tires in the warehouse, covering them to make it appear that they had been there for some time. There is no reasonable inference to be drawn from this action other than that defendant was conscious of his guilt. Someone who honestly believed that he had been given permission to take the tires by one with authority would not have gone to such absurd lengths—including the expense of buying five tires—to cover up his actions.

The jury also heard evidence that defendant had a crisis of conscience in regard to the taking of the tires, debating "should I take 'em, shouldn't I take them," before deciding to take the items. This inner debate cannot be reconciled with an honest belief that one has been given permission to take items by one with authority to do so.

It is true that the test here is not the reasonableness of defendant's belief that he had a right to take the tires, but its subjective good faith, i.e. whether the belief was honest or a pretense. But to attribute to defendant the state of mind necessary for a claim of right defense is to do more than to ascribe to him a single unreasonable belief; it is to assume that he was completely lacking in any kind of worldly wisdom or judgment.

The majority rejects the proposition that a defendant, in order to assert the claim of right defense, must establish that he previously owned or possessed the property at issue—which the majority takes to be the theory relied upon by County Court. But that was not the ruling of the court. Rather the court correctly rejected a claim of right defense because defendant failed to establish a legitimate claim to one.

Professor LaFave sets out the scope of the claim of right defense cogently in his treatise on substantive criminal law. "One may take the property of another honestly but mistakenly believing (1) that it is his own property, or (2) that it is no one's property, or (3) (though he knows it is another's property) that the owner has given him permission to take it as he did" (3 LaFave, Substantive Criminal Law § 19.5 [a], at 88 [2d ed 2003]). The Appellate Division cases cited by the majority (*People v Ricchiuti*, 93 AD2d 842 [2d Dept 1983]; *People v Ace*, 51 AD3d 1379 [4th Dept 2008]) are consistent with this analysis. Thus a defendant, in order to assert the claim of right defense, must

claim either that he previously owned the property at issue, or that he was unaware that it belonged to another, or that its *owner* permitted him to take it. Defendant's claim that an undersheriff—clearly not the owner of county surplus property—permitted his actions does not accord with this analysis.

It is well-established that "when no reasonable view of the evidence would support a finding of [a] tendered defense, the court is under no obligation to submit the question to the jury" (*People v Watts*, 57 NY2d 299, 301 [1982]). Consequently, County Court's denial of defendant's request to charge a claim of right defense should be upheld. I would reverse the order of the Appellate Division and reinstate defendant's conviction.

Chief Judge LIPPMAN and Judges READ, SMITH and JONES concur with Judge CIPARICK; Judge PIGOTT dissents and votes to reverse in a separate opinion in which Judge GRAFFEO concurs.

Order affirmed.